WILLIAM F. MATTINGLY, Receiver of the WASHINGTON CITY SAVINGS BANK *vs.* PETER G. GRIMES, Assignee of S. T. SUIT.

*Money paid into Court and deposited in Bank to the credit of the cause, not Liable to the process of Attachment— When a Court of Equity is not authorized to retain a Fund paid into Court, to allow the Validity of the Assignment thereof to be Litigated.*

B. being entitled to a distributive share of the proceeds of his father's real estate sold under a decree, made several successive assignments of portions thereof. In January, 1872, the auditor stated an account distributing this share to these several assignees in the order of priority, and auditing to W. the last of them, the balance of $800.56 in part satisfaction of his assignment for $1000, dated the 11th of April, 1871. This account was ratified on the 14th of October, 1872, and on the 24th of that month W. assigned the amount thus audited to him to S. Afterwards there was a re-sale of the lands and the proceeds were all collected by the trustee and paid into Court on or before the 9th of April, 1876. On the 22nd of March, 1876, S. assigned to G. his interest in the amount that had been thus audited to W. and under these assignments, which were duly filed in the case, G. by petition asked for an order directing the clerk to draw his check for the payment of this sum to him. M. a creditor of S. recovered a judgment against him on the 19th of April, 1876, and on this judgment issued an attachment on the 20th of July, 1877, which on the same day was laid in the hands of the trustee; and at the same time he filed his petition in the cause averring the pendency of this attachment, charging that the assignment to G. was made by S. with intent to hinder, delay and defraud his creditors, that he was insolvent, and praying the Court to declare the assignment void, and to direct the money to be paid to him, and to retain the fund for that purpose. The Court passed an order dismissing this petition and directing the money to be paid to G. On appeal by M. from this order, it was HELD:

1st. That the fund was not liable to the process of attachment.

2nd. That the circumstances of the case did not authorize the Court to retain the fund until the validity of the assignment by S. to G. could be litigated by the creditors of the former.

3rd. That the Court was right in dismissing the petition of M. and directing the money to be paid to G.

Where real estate has been sold by a trustee under a decree of the Court, and the auditor's account distributing the proceeds of sale, stated and ratified, and such proceeds paid into Court under an order to that effect, and deposited in bank to the credit of the cause, an attachment laid in the hands of the trustee to affect a part of such proceeds, cannot be sustained.

The principles settled in *Early vs. Dorsett, Harris & Co.*, 45 *Md.*, 462, and previous decisions on the same subject, not applicable to this case.

The case of *Baltzell vs. Foss*, 1 *H. & G.*, 504, distinguished from this case.

APPEAL from the Circuit Court for Prince George's County, in Equity.

This appeal was taken from the order of the Court below, dismissing the petition of the appellant and directing the fund in question to be paid to the appellee. The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, STEWART, BRENT, MILLER, ALVEY and ROBINSON, J.

*C. C. Magruder*, for the appellant.

The Court erred in passing the order of 20th July, 1877, directing a check to be given to Peter G. Grimes for the fund in controversy, for the said money was under the control of the Court, and should have been held and protected by it, until the appellant had time to sustain by proof his claim to it, and to prove the allegations of his petition. If the assignment to Grimes was fraudulent and void as alleged, it should be annulled and vacated, and the money directed to be paid to the appellant.

If the appellant, by any amendment of his pleadings, could have shown himself entitled to relief, the Court erred

in passing the order and dismissing his petition without giving him reasonable time to do so. *Early, Guardian, &c. vs. Harris, Dorsett & Co.,* 45 *Md.,* 462; *Baltzell vs. Foss,* 1 *Harris & Gill,* 504.

*Richard B. B. Chew,* for the appellee.

The Court committed no error in passing the order appealed from.

1st. Because the appellant had obtained no special lien or claim on the fund in controversy, which gave to the Court any jurisdiction or authority to detain it from the appellee, or to grant the appellant any relief as prayed in his petition. The fund was not affected by the attachment which the appellant caused to be issued and laid in the hands of the trustee as garnishee, who was *functus officio* as to the fund, the same having been paid into Court prior to the attachment suit, in which there never can be a judgment against the garnishee. He had no control of the fund, as to which he could *confess* a judgment, or *respond* to its payment, except out of his own means, and there can be no judgment *in rem.* in such a case. There is a defect of remedy, *ab initio. Uhl vs. Dillon,* 10 *Md.,* 503; *Wiggins, et al. vs. Armstrong, et al.,* 2 *Johnson's Ch. R.,* 144; *Hubbard vs. Ennalls,* 14 *Md.,* 356; *Rich, et al. vs. Levy, et al.,* 16 *Md.,* 74; *Furlong vs. Edwards,* 3 *Md.,* 99.

The circumstances of the case in *Baltzell vs. Foss,* 1 *Harris & Gill,* 504, are wholly unlike the present case. There the fund sought to be subjected to the payment of the petitioner's claim, belonged to the estate of a deceased non-resident distributee, who died in the State of Illinois, leaving no personal estate in Maryland. The jurisdiction to administer the distributee's interest in the fund in that case, for the benefit of the distributee's creditors, attached under the Act of 1785, ch. 72. He died, leaving no personal estate in Maryland sufficient to pay his debts, and

hence the right of his creditors to have the fund, which stood in the place of the land, applied in satisfaction of their debts.

2nd. If the appellant had any remedy as to this fund, it was not in equity, but at law, by attachment on original process, where the questions of the *bona fides* of the assignment and the solvency or insolvency of the assignor, were more properly cognizable and determinable.

3rd. The doctrine announced and settled in the cases of *Early, Guardian vs. Dorsett, Harris & Co., et al.*, 45 *Md.*, 462; *Groome vs. Lewis*, 23 *Md.*, 137, and *Hardesty vs. Campbell*, 29 *Md.*, 533, does not apply to the facts of this case, where the whole fund was paid into Court by the trustee before the attachment issued. In such a case, no lien or claim, inchoate or complete, can result from issuing an attachment by way of execution.

MILLER, J., delivered the opinion of the Court.

The principles settled in *Early vs. Dorsett, Harris & Co.*, 45 *Md.*, 462, and by previous decisions on the same subject, cannot be applied in the present case. Here the entire proceeds of sale had been paid *into Court* under an order to that effect, and deposited in bank to the credit of the cause *before* the attachment was laid in the hands of the trustee. In that state of case it is clear these funds were not liable to the process of attachment. Nor does the record disclose such a condition of things as would authorize the Court to retain the fund until the validity of the assignment by Suit to Grimes could be litigated by the creditors of the former. What are the facts? James L. Brown was entitled to a distributive share of the proceeds of his father's real estate sold in this case, and had made several successive assignments of portions thereof.

In January, 1872, the auditor stated an account distributing this share to these several assignees in the order of priority, and auditing to Arthur F. Willmarth the last

of them, the balance of $800.56, in part satisfaction of his assignment for $1000, dated the 11th of April, 1871. This account was ratified on the 14th of October, 1872, and on the 24th of that month Willmarth assigned the amount thus audited to him to S. T. Suit. Afterwards there was a re-sale of the lands and the proceeds were all collected by the trustee and paid into Court on or before the 9th of April, 1876. On the 22nd of March, 1876, Suit assigned to Grimes his interest in the amount that had been thus audited to Willmarth, and under these assignments, which were duly filed in the case, the appellee by petition asked for an order directing the clerk to draw his check for the payment of this sum to him.

The appellant, a creditor of Suit, recovered a judgment against him on the 19th of April, 1876, and on this judgment issued an attachment on the 20th of July, 1877, which on the same day was laid in the hands of the trustee; and at the same time he filed his petition in the cause averring the pendency of this attachment, charging that the assignment to Grimes was made by Suit with intent to hinder, delay and defraud his creditors, that he was insolvent, and praying the Court to declare the assignment void and to direct the money to be paid to him, and to retain the fund for that purpose.

The attachment, as we have said, was entirely ineffectual, and no lien or right to the fund could be acquired by means of it, and yet the relief sought by the petition seems to be based on the pendency of this proceeding, so as to bring the case within the decision in *Early's Case.* But in that case not only were the funds still in the hands of the trustee, but the attachment was laid prior to the assignment under which the appellees claimed. It is said, however, the petitioner might have amended his petition and brought in the other creditors of Suit to assert their rights and contest the validity of the assignment, and that the Court should have given him time to do this.

In other words, it is argued that the Court should have held on to the funds for the purpose, without being asked to do so, of allowing or instructing the petitioner to amend his petition, and put his claim to relief on a different footing, and bring in other parties to the controversy who in case of success would' be entitled to share in the fund. The authority relied on to support this position, is that of *Baltzell vs. Foss,* 1 *H. & G.,* 504, but in our opinion it does not sustain it. The point of that decision as we understand it is to this effect, viz., where real estate situated in Maryland is sold for partition, and one of the heirs to whom the estate had descended is a *non-resident* and *dies before* the proceedings for a sale were instituted, *his creditors* may come in *by petition* and claim as against his legal representatives parties to the suit, his share of the fund in Court on proof of insufficiency of his personal assets, and the Court should retain the fund and allow a defective petition filed by such creditors to be amended in order to perfect their claim. That seems to us a very different case from this. Here it is proposed to contest the validity of an assignment between parties not parties to the proceeding under which the land was sold, and in nowise affecting the creditors of such parties. Such a controversy, supposing the appellant to be in a position to initiate it, must be conducted in behalf of all the creditors of Suit, and not only Grimes, the assignee, but Suit himself, the assignor, is an indispensable party to it. We know of no rule of chancery practice, nor any precedent, that would allow the engrafting of such a proceeding by way of petition upon an item of an auditor's account in a case like the present. We are therefore clearly of opinion, the Court was right in dismissing the petition of the appellant and directing the money to be paid to the appellee.

*Order affirmed, and*
*cause remanded.*